18–1049

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

ALFONSO CIOFFI, MELANIE ROZMAN, MEGAN ROZMAN, MORGAN ROZMAN,
*Plaintiffs–Appellees*

v.

GOOGLE LLC,
*Defendant–Appellant*

On appeal from the United States District Court for the Eastern District of Texas in No. 2:13-cv-00103-JRG, Chief Judge J. Rodney Gilstrap

## REPLY BRIEF OF APPELLANT GOOGLE LLC

Nathan K. Kelley
PERKINS COIE LLP
700 13th Street, N.W, Suite 800
Washington, D.C. 20005
Phone: (202) 654–3343
E-mail: NKelley@perkinscoie.com

Darin W. Snyder
David S. Almeling
Luann L. Simmons
Mark Liang
O'MELVENY & MYERS LLP
Two Embarcadero Center, 28th Floor
San Francisco, California 94111
Phone: (415) 984–9700
E-mail: dsnyder@omm.com

Dan L. Bagatell
PERKINS COIE LLP
3 Weatherby Road
Hanover, New Hampshire 03755
Phone: (602) 351–8250
E-mail: DBagatell@perkinscoie.com

Andrew T. Dufresne
PERKINS COIE LLP
33 E. Main Street, Suite 201
Madison, Wisconsin 53703
Phone: (608) 663–7492
E-mail: ADufresne@perkinscoie.com

Counsel for Appellant Google LLC

August 26, 2022

## TABLE OF CONTENTS


Table of Authorities ........ iii

Table of Abbreviations and Conventions ........ v

Introduction ........ 1

Argument ........ 4

I. All four asserted claims violate the original-patent requirement because they include limitations that were not clearly and unequivocally disclosed in the original ’247 patent ........ 4

A. This Court reviews *de novo* and does not defer to the district court’s analysis of the ’247 specification and prosecution history ........ 4

B. Plaintiffs’ merits arguments are meritless ........ 6

1. Figure 6 of the ’247 patent did not clearly and unequivocally disclose two “web browser processes” ........ 7

a. The ’247 patent taught that a processor can *carry out* a process, not that a processor *is* a process ........ 9

b. The ’247 patent’s description of “interactive network process status data” did not clearly and unequivocally disclose two “web browser processes” ........ 11

2. Plaintiffs’ arguments about “passing website data” and “initializing a second web browser process” fail for the same reasons ........ 18

II. The product claims violate the rule against recapture because they cover single-processor implementations that the patentees surrendered during original prosecution ........ 19

A. Whether Plaintiffs improperly recaptured surrendered subject matter is a legal issue on which this Court does not defer to the district court ........ 20

B. Limiting the claimed "logical processes" to "web browser processes" was unrelated to the surrender of single-processor implementations ....................20

C. The claims are not directed to an "overlooked aspect"....................23

III. Google did not infringe any of the claims as a matter of law....................26

A. Google's accused products did not infringe any claims because they shared "first memory space" originally dedicated to accused "first web browser process" (the Browser) with the accused "second web browser process" (the Renderer) ....................26

B. Plaintiffs failed to show that Google had the mental state required for indirect infringement of the method claims....................30

Conclusion ....................32

Certificate of Compliance with Type-Volume Limitation

Certificate of Authority

## TABLE OF AUTHORITIES

**Cases** **Pages**

*Advanced Video Techs. LLC v. HTC Corp.*,
No. 11-cv-6604, 2013 WL 6017923 (S.D.N.Y. Nov. 7, 2013) ........................12

*All Dental Prodx, LLC v. Advantage Dental Prod., Inc.*,
309 F.3d 774 (Fed. Cir. 2002) ........................................................................12

*Antares Pharma, Inc. v. Medac Pharma Inc.*,
771 F.3d 1354 (Fed. Cir. 2014) ........................................ 5, 6, 10, 12, 13, 14, 15

*Ariad Pharms., Inc. v. Eli Lilly & Co.*,
598 F.3d 1336 (Fed. Cir. 2010) (en banc) ..........................................................5

*Athletic Alts., Inc. v. Prince Mfg., Inc.*,
73 F.3d 1573 (Fed. Cir. 1996) ........................................................................26

*Benno*, *In re*,
768 F.2d 1340 (Fed. Cir. 1985) ......................................................................24

*Commil USA, LLC v. Cisco Sys., Inc.*,
575 U.S. 632 (2015) ..........................................................................................30

*DSU Med. Corp. v. JMS Co.*,
471 F.3d 1293 (Fed. Cir. 2006) (en banc in part) ............................................30

*Forum US, Inc. v. Flow Valve, LLC*,
926 F.3d 1346 (Fed. Cir. 2019) ......................................................1, 4, 5, 16, 17

*Fujikawa v. Wattanasin*,
93 F.3d 1559 (Fed. Cir. 1996) ........................................................................13

*Gen. Elec. Co.*, *In re*,
789 F. App'x 857 (Fed. Cir. 2019) ..........................................................23, 25

*Gen. Hosp. Corp. v. Sienna Biopharms., Inc.*,
888 F.3d 1368 (Fed. Cir. 2018) ......................................................................13

*Global-Tech Appliances, Inc. v. SEB S.A.*,
563 U.S. 754 (2011) ..........................................................................................30

*Hester Indus., Inc. v. Stein, Inc.*,
142 F.3d 1472 (Fed. Cir. 1998) ....................20, 25

*Mentor Corp. v Coloplast, Inc.*,
998 F.2d 992 (Fed. Cir. 1993) ....................25

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*,
545 U.S. 913 (2005) ....................31

*Mostafazadeh*, *In re*,
643 F.3d 1353 (Fed. Cir. 2011) ....................23, 26

*U.S. Indus. Chems., Inc. v. Carbide & Carbon Chems. Corp.*,
315 U.S. 668 (1942) ....................5, 13, 17

*Youman*, *In re*,
679 F.3d 1335 (Fed. Cir. 2012) ....................26

**Statutes and Rules**

35 U.S.C. § 112 ....................5, 6, 12, 13, 24

35 U.S.C. § 251 ....................*passim*

35 U.S.C. § 271 ....................30

## TABLE OF ABBREVIATIONS AND CONVENTIONS

| | |
|---|---|
| Appx____ | appendix page____ |
| BlueBr__ | page __ of Google's opening brief |
| Google | defendant Google LLC (formerly Google Inc.) |
| Plaintiffs | plaintiffs Alfonso Cioffi and Melanie, Megan, and Morgan Rozman, heirs to the estate of Allen Frank Rozman |
| RedBr__ | page __ of Plaintiffs' response brief |
| (*xx*:*yy-zz*) | column *xx*, lines *yy-zz* |
| '247 patent | U.S. Patent No. 7,484,247 (surrendered upon reissue) |
| RE'500 patent | U.S. Reissue Patent No. RE43,500 |
| RE'528 patent | U.S. Reissue Patent No. RE43,528 |

# INTRODUCTION

Plaintiffs' response brief misstates both the issues before this Court and the standards of review that apply. Under the correct analysis, the asserted reissue claims are invalid under 35 U.S.C. § 251 as a matter of law, and the claims were not infringed even if they were valid.

As to the original-patent requirement, Plaintiffs repeatedly urge this Court to defer to "fact findings" by the district court. But the standard of review is *de novo*. The test for satisfying the original-patent requirement is whether the originally issued patent clearly and unequivocally disclosed—on its face and as a separate invention—the same invention later claimed on reissue. That is a matter of law subject to review without deference. In some cases, there may be underlying factual issues about what the original patent actually said—e.g., the meaning of a technical term used in the original patent. But Plaintiffs have identified no such issues here. They and the district court instead relied on expert testimony about what a skilled artisan would *infer* or *understand* from the original '247 patent's specification. And this Court has held, most recently in *Forum US, Inc. v. Flow Valve, LLC*, 926 F.3d 1346 (Fed. Cir. 2019), that such speculation is immaterial.

On the merits, Plaintiffs say "Google admits that two 'web browser processes [we]re disclosed within the '247 Patent specification," RedBr1, but that is simply false. As Plaintiffs ultimately acknowledge, the question boils down to whether

Figure 6 and column 14 of the ’247 patent clearly and unequivocally disclosed an invention specifically directed to two *web browser* processes. When this Court reads Figure 6 and column 14 for itself, the inescapable answer will be *no*. Neither Figure 6 nor column 14 mentioned web browsing or any synonym of web browsing. Instead, they referred to an “interactive network process” and “status data” for such a process. The only embodiment described there was *online gaming*, which the patentees specifically distinguished from web browsing when prosecuting their reissue claims. Nothing approaching the necessary clear, unequivocal, and separate disclosure of two web browser processes appears in the original ’247 patent, and the asserted claims are therefore invalid.

If this Court agrees on that point, all other issues in this appeal will be moot. Nevertheless, the two product claims are independently invalid under rule against recapture. Plaintiffs again urge this Court to defer to supposed “fact findings” by the district court, but they again assume the wrong standard of review. The recapture inquiry turns on what claim scope the patentees surrendered during original prosecution and later reclaimed on reissue. That is a matter of law, and the prosecution history makes clear that the patentees surrendered and then reclaimed single-processor embodiments. Plaintiffs contend that the patentees relatedly narrowed the reissue claims to “web browser processes,” but the prosecution record makes clear that that the number of processors and the type of logical processes were unrelated

issues. Plaintiffs' alternative argument that the reissue claims were directed to an "overlooked aspect" fails as a matter of law because the newly claimed web browser processes were within the scope of the originally claimed "logical processes."

All four asserted claims also were not infringed as a matter of law. Plaintiffs argue that infringement was a battle of the experts. But the parties' experts *agreed* on how the accused products worked. In particular, they agreed that memory space that was initially allocated exclusively to the accused "first web browser" process, making it "first memory space," was later shared with the accused "second web browser" process, making it "second memory space." The dispositive issue is whether Plaintiffs were entitled to redesignate dedicated "first memory space" as "second memory space." They were not because the specification nowhere contemplated that dedicated "first memory space" may be converted into shared "second memory space," and the undisputed claim construction requires the two memory spaces to be distinct and non-overlapping. Plaintiffs also failed to prove inducement of or contribution to infringement of the method claims, but those issues should be moot.

The Court should reverse and direct entry of judgment for Google.

## ARGUMENT

### I. All four asserted claims violate the original-patent requirement because they include limitations that were not clearly and unequivocally disclosed in the original ’247 patent

#### A. This Court reviews *de novo* and does not defer to the district court’s analysis of the ’247 specification and prosecution history

Plaintiffs acknowledge that reissue claims’ compliance with the original-patent requirement “is a question of law reviewed *de novo*.” RedBr23. Yet Plaintiffs urge this Court to defer to the district court’s conclusions, including purported findings about the meaning and scope of the ’247 patent’s specification and prosecution history based on testimony from Plaintiffs’ expert. Quoting *Forum US*, 926 F.3d at 1351-52, Plaintiffs observe that § 251 “can involve underlying questions of fact.” RedBr23. But the district court’s assessments were *legal* conclusions, not factual findings, and Plaintiffs’ reliance on conjecture by their expert contradicts *Forum US*.

The dispositive question in *Forum US* was whether expert testimony could be used to show what a skilled artisan would “understand” from an original patent that lacked express disclosure of a feature later claimed on reissue. 926 F.3d at 1352. This Court’s answer was *no*. The Court recognized that expert testimony and fact-finding may play a limited role “to ascertain the meaning of a technical or scientific term” used in the specification. *Id.* at 1351 (citation omitted). But such fact-finding is limited to understanding “what the instruments … actually say.” *Id.* (citation omitted). Opinions about what a skilled artisan might *infer* are immaterial because

satisfaction of the original-patent requirement turns on whether the "*face*" of the original patent "*clearly and unequivocally* disclose[d] the newly claimed invention *as a separate invention*." *Id.* at 1351-52 (quoting *U.S. Indus. Chems., Inc. v. Carbide & Carbon Chems. Corp.*, 315 U.S. 668, 676 (1942), and *Antares Pharma, Inc. v. Medac Pharma, Inc.*, 771 F.3d 1354, 1362 (Fed. Cir. 2014)) (emphases added).

The legal question posed by the original-patent requirement contrasts with the factual question posed by the written-description requirement of 35 U.S.C. § 112, which is whether "the disclosure of the application relied upon reasonably conveys to those skilled in the art that the inventor had possession of the claimed subject matter as of the filing date." *Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) (en banc). Because the written-description requirement considers how skilled artisans would have interpreted the specification, expert testimony is relevant to that analysis. By contrast, the original-patent requirement focuses on whether the reissue claims are, in the words of § 251, "for the invention disclosed in the original patent." The issue under § 251 is not what a skilled artisan would infer about what the inventors "possessed," but what the original patent clearly set forth as the invention. That is why it is "the duty of a court to determine *for itself*, *by examination of the original and the reissue*, whether they are for the same invention." *U.S. Indus. Chems.*, 315 U.S. at 678 (emphasis added).

Plaintiffs have not identified any dispute or finding about the technical meaning of any term in the '247 patent. Instead, they strive to manufacture factual issues about what skilled artisans may have inferred from the '247 patent's specification and prosecution history, and they substitute § 112 analysis for the stricter, textually focused § 251 analysis. Plaintiffs' brief is replete with references to what a skilled artisan would "understand," "interpret[ ]," "view," or "recognize" from the specification. *E.g.*, RedBr3, RedBr18, RedBr19-20, RedBr24, RedBr27, RedBr32-33, RedBr38. The correct inquiry is whether the '247 specification itself clearly and unequivocally disclosed a separate invention using two or more "web browser processes." And this Court owes no deference to the district court or Plaintiffs' expert on that score.

### B. Plaintiffs' merits arguments are meritless

On the merits, Plaintiffs' arguments all depend on supposition about whether statements in the original '247 patent might have suggested or indicated the specific inventions later recited in the reissue claims. But "the specification of the original patent must do *more* than merely suggest or indicate the invention recited in reissue claims." *Forum US*, 926 F.3d at 1351 (emphasis added). Instead, the original patent must have "*clearly and unequivocally* disclose[d] the newly claimed invention *as a separate invention*." *Antares*, 771 F.3d at 1362 (emphasis added).

### 1. Figure 6 of the ’247 patent did not clearly and unequivocally disclose two “web browser processes”

For disclosure of two “web browser processes,” Plaintiffs rely almost entirely on Figure 6 of the original ’247 patent and the corresponding text in the specification at column 14, lines 33-40, as describing two web browser processes. RedBr24-27. Plaintiffs’ statement of the case also mentions column 16, RedBr9, but that passage is unavailing. It notes that “[a] *second* logical process may comprise executing instructions necessary to carry out the functions of a web browser program,” Appx109 (16:30-32) (emphasis added), but it nowhere discusses having the *first and second* logical processes run a web browser program. For that critical element, Plaintiffs depend on Figure 6 and column 14. And the supposed disclosure of two web browser processors there was far from clear and unequivocal. Indeed, it was non-existent.

As Plaintiffs concede, RedBr24, Figure 6 did not mention *any* web browser processes:




Appx97. Nor did the corresponding written description. *See* Appx132 (13:66-14:50).

Plaintiffs nonetheless contend that Figure 6's "disclosure of [an] 'interactive network process' with P1 and P2 exchanging network status data clearly and

unequivocally discloses the use of two web browser processes." RedBr24. But bridging the gap from what Figure 6 actually said to the legal conclusion that it clearly and unequivocally described two web browser processes requires crediting and then combining two sets of inferences. First, P1 and P2 must be read as *processes* rather than *processors* even though they are expressly labeled as *processors*. Second, the description of an "interactive network process" and passing "interactive network process status data" between P1 and P2 must be read as a disclosure of multiple "web browser processes." Figure 6 and column 14 came nowhere close to clearly and unequivocally disclosing two web browser processes, and the inferences and mental gymnastics Plaintiffs use to get there stretch the original-patent requirement far beyond the breaking point.

**a. The '247 patent taught that a processor can *carry out* a process, not that a processor *is* a process**

The original '247 patent repeatedly described P1 and P2 of Figure 6 as *processors*, not *processes*. Appx97 ("1st processor (P1)" and "2nd processor (P2)"), Appx108 (14:33-40). Plaintiffs nonetheless maintain that "it is proper to view P1 and P2 as 'logical processes' capable of carrying out the same functions of physical processors." RedBr26-27, RedBr39-40.

As support for this rewrite, Plaintiffs rely on a sentence elsewhere in the specification observing that "logical processes" are among the "*functions carried out*" by a processor. RedBr26 (citing Appx109 (16:39-43)) (emphasis added). But that

sentence simply said that processors can run processes. It did not say, much less clearly and unequivocally disclose, that processors P1 and P2 are *themselves* processes. *See also* Appx4161-4162 (Cioffi confirming that processes and processors "are different"). Moreover, the cited sentence discussed the different embodiment of Figure 9, in which "separate, secure logical processes [were] executing on the same physical processor." Appx109 (16:23-24). Plaintiffs' attempt to combine the Figure 6/column 14 and Figure 9/column 16 embodiments tacitly recognizes that the disclosure in Figure 6 and column 14 was inadequate. *See Antares*, 771 F.3d at 1363 (invalidating reissue claims where "the exact embodiment claimed on reissue" was not separately and expressly disclosed in the original specification).

Plaintiffs go further afield in trying to supplement Figure 6 with an examiner's comments during *ex parte* reexamination. RedBr17-19, RedBr27 n.9, RedBr40. Those statements are irrelevant because they were not part of the original patent's disclosure. And they would not help Plaintiffs anyway. Plaintiffs cite two excerpts, both rejecting a claim construction proposed by Plaintiffs that would have required a single, discrete "secure web browser process" that itself included first and second web browser processes. Appx6239-6240 (final action); Appx6248-6249 (examiner's answer recapping final action). The examiner summarized a series of inferences necessary for Figure 6 to support Plaintiffs' construction: "*if*" Figure 6 were implemented in software and P1 and P2 "*could*" represent logical processes, and "*if*" the

"interactive network process" "*were*" a "web browser process, then Figure 6 "*could*" represent software for a "*notional*" "web browser process" that includes first and second "logical processes." Appx6240-6241 (emphasis added). That tortured chain of inferences from a claim-construction analysis applying the broadest-reasonable-interpretation standard during reexamination hardly establishes the clear and unequivocal disclosure of two "web browser processes" required under § 251. Plaintiffs also ignore the examiner's comments on the next page, which *rejected* Plaintiffs' contention that "the term 'interactive network process' includes 'web browser processes'" such that "'it [wa]s obvious' to a person of ordinary skill in the art that 'a web browser process or program' is within the meaning of the 'interactive network process.'" Appx6241.

In short, processors are processors, and processes are processes. Processors can *run* processes, but they are not *themselves* processes.

**b. The '247 patent's description of "interactive network process status data" did not clearly and unequivocally disclose two "web browser processes"**

Plaintiffs next contend that if P1 and P2 are understood as processes, then "it is clear and equivocal that Figure 6 discloses the use of two web browser processes" because "P1 and P2 are each processes that can access data on websites." RedBr27; *see also* RedBr42. To support this additional inference, Plaintiffs summarily assert that Figure 6 shows P2 receiving "interactive network process status data" that is

later shared with P1, and then, based on their expert's testimony, argue that a skilled artisan "would understand" that as a disclosure of two "web browser processes." RedBr27 (citing Appx108 (14:33-39); Appx5045). Plaintiffs err at both steps.

*i.* Plaintiffs contend that Figure 6's reference to an "*interactive network process*" clearly and unequivocally described two "*web browser* processes" because that "broader term … on its face encompasses a web browser process." RedBr28-29, *see also* RedBr30, RedBr34-35, RedBr37-38. That argument is legally flawed.

Again, to satisfy the original-patent requirement, the original patent must have "*clearly and unequivocally* disclose[d] the newly claimed invention *as a separate invention*." *Antares*, 771 F.3d at 1362 (emphases added). Just as a general reference to "an animal" does not clearly and unequivocally identify a porcupine, the general reference to an "interactive network process" in Figure 6 did not clearly and unequivocally describe a *web browser* process, much less call out the use of two distinct web browser processes *as a separate invention*.

In arguing otherwise, Plaintiffs seek refuge in cases addressing written-description law under § 112 rather than the original-patent requirement of § 251. RedBr28 (citing *All Dental Prodx, LLC v. Advantage Dental Prod., Inc.*, 309 F.3d 774, 779 (Fed. Cir. 2002)); RedBr30 (citing *Advanced Video Techs. LLC v. HTC Corp.*, No. 11-cv-6604, 2013 WL 6017923, at *4 (S.D.N.Y. Nov. 7, 2013)). But as Plaintiffs concede, RedBr1, the original-patent requirement, though "akin" to the

written-description requirement, imposes a *heightened* disclosure standard for broadening reissue claims. At any rate, even under § 112, disclosing a genus often does not suffice to describe a later-claimed species. *See*, *e.g.*, *Gen. Hosp. Corp. v. Sienna Biopharms., Inc.*, 888 F.3d 1368, 1372 (Fed. Cir. 2018); *Fujikawa v. Wattanasin*, 93 F.3d 1559, 1571 (Fed. Cir. 1996). Such generic references certainly do not suffice under the more rigorous standard of § 251 because "it is not enough that an invention might have been claimed in the original patent because it was suggested or indicated in the specification." *U.S. Indus. Chems.*, 315 U.S. at 676; *Antares*, 771 F.3d at 1362 (quoting *U.S. Indus. Chems.*).

The only "interactive network process" clearly and unequivocally described in connection with Figure 6 was an *online gaming* process, not a web browser process. Appx108 (14:3-54) (discussing "interactive gaming" and exchange of "game status information"). Plaintiffs mistake generic disclosure of a broad genus for clear and unequivocal disclosures of each species within that genus.

Plaintiffs complain that Google "tries to limit" the term "interactive network process" to online gaming, arguing that online gaming is just "one example" of such a process. RedBr28-29 (emphasis omitted). But Plaintiffs miss the point: regardless of what else might potentially fit within the generic term "interactive network process," online gaming is the *only* "interactive network process" clearly and unequivocally described in the discussion of Figure 6. Appx108 (14:3-54). The

"exact embodiment" of two web browser processes was not clearly, explicitly, and unequivocally disclosed as a separate invention in Figure 6, column 14, or anywhere else in the '247 patent—and that is what the original-patent requirement demands. *Antares*, 771 F.3d at 1363.

The applicants' distinction of Narin during prosecution confirms that online gaming and web browsing are different types of "network processes." The examiner rejected generic claims because they encompassed both web browsing *and* Narin's game-rendering application. Appx11078-11079. The inventors distinguished Narin by amending the claims to recite "web browser processes" specifically. Appx11140, Appx11143-11144, Appx11157-11158. Online gaming and web browser processes are therefore *different* (as Plaintiffs acknowledge, RedBr30), and the description in Figure 6 of using processors P1 and P2 to carry out online gaming came nowhere close to clearly and unequivocally describing use of two web browser processes.

Plaintiffs' arguments regarding the broader term "logical process" are similarly flawed. RedBr33-36. Plaintiffs point to Google's agreement that a web browser process is one subspecies within the vast genus of logical processes. RedBr33-34, RedBr36.[1] Plaintiffs then assume that if the "disclosure of a first logical

---

[1] At times, Plaintiffs assert that Google's expert testified not just that a web browser process is a *type* of logical process, but that the two are "the same thing." RedBr34, RedBr36. He said no such thing. After explaining where prior art disclosed

(footnote continued on next page)

process encompasses a web browser process," the original-patent requirement must be satisfied because claiming a "subspecies (i.e., the 'web browser process' of the asserted claims) is clearly and unequivocally *within the scope of the original invention* disclosed in the '247 Patent specification." RedBr35 (quoting Appx53) (emphasis added). That does not follow. Again, the original patent must have *clearly and unequivocally disclosed as a separate invention* the invention newly claimed on reissue. *Antares*, 771 F.3d at 1362. Collectively alluding to "logical processes" as a group did not clearly and unequivocally disclose the content of the later reissue claims focused on one of that group's many members.

Plaintiffs assert that it "stretches credibility" to assert that web browser processes were "within the scope" of claims presented during prosecution of the '247 patent but not clearly and unequivocally described as a separate invention in the underlying specification. RedBr36. But as Google explained in its opening brief (BlueBr38-39), nothing in Google's arguments regarding the original-patent requirement contradicts its position regarding improper recapture. The fact that during prosecution of the original '247 patent the applicants proposed claims reciting a

---

a web browser process, he was asked where the prior art taught a logical process. Appx4780; *see* Appx163 (24:50-53). He identified the *relevant prior-art disclosure* for the logical process as "the same as the first web browser process." Appx4780. But that was because a web browser process is a type of "logical process," not because a web browser process is the *same thing*. Appx4781.

broad term does not establish that every species potentially covered by that term was clearly and unequivocally disclosed as a separate invention in the specification. If the law were otherwise, patentees could avoid having claims invalidated by filling their specifications with cursory, generic disclosures, and the written-description and original-patent requirements would be toothless.

*ii.* Plaintiffs' reliance on their expert's testimony is also misplaced. The expert testified:

> Here we have two processes, P1 and P2. And both of them are retrieving data from the network, and that's exactly what needs to be done by the processes of a web browser.

Appx5045. That testimony improperly conflated *processors* P1 and P2 with two *processes*, and it conflated retrieving data from a *network* with retrieving data from a *website*. Building on those flawed premises, the expert proceeded to testify that "P1 and P2 accessing website data" would meet the definition of a "web browser process." *Id.* But he identified nowhere in Figure 6 or column 14 that described two web browser processes or two processes accessing website data. Even if that is what he thought skilled artisans would infer, an expert's opinion about "what a person of ordinary skill in the art would purportedly understand" does not satisfy the original-patent requirement, which demands clear and unequivocal disclosure in the original patent itself. *Forum US*, 926 F.3d at 1352. There simply were no clear and unequivocal statements in Figure 6 or the corresponding text in column 14 identifying P1

and P2 as web browser processes and specifying that both P1 and P2 accessed website data.

Plaintiffs' efforts to reconcile their position with *Forum US* underscore the flaws in their argument. Plaintiffs acknowledge that this Court distinguished between permissible use of expert testimony to understand what the original specification "actually says" and impermissible use of such testimony to establish "what a [skilled artisan] would understand in the absence of" express disclosure. RedBr32; *see Forum US*, 926 F.3d at 1351 (quoting *U.S. Indus. Chems.* and holding that courts may consider expert evidence "to ascertain the meaning of a technical or scientific term of art so that the court may be aided in understanding not what the instruments mean but what they actually say"). Yet Plaintiffs repeatedly cross that line, arguing that the district court properly used expert testimony not just to understand the meaning of terms of art used in the '247 specification, but in making the ultimate determination whether that specification satisfied the original-patent requirement. RedBr32. This problem pervades Plaintiffs' brief. *E.g.*, RedBr27 (contending that their expert explained that "a [skilled artisan] interpreting Figure 6 would understand that it discloses the use of two web browser processes"); RedBr32-33 (highlighting the district court's reliance on expert testimony "explaining what such disclosures convey" to a skilled artisan and asserting that a skilled artisan "would understand" the specification as unequivocally describing the reissue claims); RedBr33 (arguing

that their expert "testified that a [skilled artisan] would understand the Figure 6 'interactive network process' embodiment as disclosing two processes that can access website data"). Conjecture about what the original specification might have suggested cannot substitute for the clear and unequivocal disclosure that the original-patent requirement demands.

#### 2. Plaintiffs' arguments about "passing website data" and "initializing a second web browser process" fail for the same reasons

Google's opening brief explained why the original '247 patent also did not clearly and unequivocally disclose the "passing website data" and "initializing a second web browser process" limitations of certain claims. BlueBr40-41. In response, Plaintiffs rely on the same misplaced assertions and serial inferences regarding Figure 6.

On both issues, Plaintiffs first contend that the original-patent requirement is satisfied "[o]nce the Court finds Figure 6 and column 14 disclose two web browser processes." RedBr37, RedBr41. Plaintiffs then reiterate their theory that processors P1 and P2 in Figure 6 "by definition refer" to logical processes, again citing only passages from the specification that refer to processes *carried out* on a processor and impermissible expert testimony about what a skilled artisan would infer. RedBr38-42. Plaintiffs also rehash their argument that a skilled artisan would "recognize" Figure 6 as clearly and unequivocally describing passing website data based on its

generic description of an "interactive network process" and ignoring that the only example in column 14 involved online gaming, not web browsing. RedBr37-38. Those arguments fail for the reasons above, and the original '247 patent likewise failed to clearly and unequivocally disclose the additional limitations of these claims.

* * *

Plaintiffs identify nothing in the original '247 patent that clearly and unequivocally described the disputed reissue claim limitations. They instead rely on inference, speculation, and unfounded expert testimony, and those cannot satisfy the demanding standard of disclosure required under § 251. All four asserted claims are invalid as a matter of law.

## II. The product claims violate the rule against recapture because they cover single-processor implementations that the patentees surrendered during original prosecution

Google's opening brief explained why the asserted product claims reclaim single-processor implementations surrendered during original prosecution, are not directed to an "overlooked aspect," and therefore violate the rule against recapture. BlueBr10-18, BlueBr41-53. In response, Plaintiffs again urge this Court to defer to the district court even though the recapture issues turn on a purely legal analysis of the scope of three sets of claims: the claims sought during original prosecution, the claims that originally issued, and the claims obtained on reissue. Plaintiffs also conflate the *type of logical process* with the *number of processors* and confuse *claim*

*scope* with *invention disclosure*. This Court should reject those arguments and hold that the reissued device claims are invalid for violating the rule against recapture.

### A. Whether Plaintiffs improperly recaptured surrendered subject matter is a legal issue on which this Court does not defer to the district court

As in their argument regarding the original-patent requirement, Plaintiffs repeatedly cite "findings of fact" by the district court and urge this Court to defer to them. But whether Plaintiffs improperly recaptured claim scope turns on the scope of the claims before surrender, at original issue, and after reissue, and this case does not involve any factual dispute about what happened during prosecution or the technical meaning of any term used during prosecution. The issue is therefore legal, and this Court reviews *de novo*. *See Hester Indus., Inc. v. Stein, Inc.*, 142 F.3d 1472, 1484 (Fed. Cir. 1998) (finding no underlying factual issues in recapture analysis involving undisputed prosecution history).

### B. Limiting the claimed "logical processes" to "web browser processes" was unrelated to the surrender of single-processor implementations

On the merits, Plaintiffs concede that the applicants surrendered single-processor structures during original prosecution and that the reissue claims now cover single-processor structures. RedBr47 ("In the reissues, the Inventors[ ] claimed a single processor embodiment again."). They instead argue, at step three of the recapture test, that the reissue claims were materially narrowed in a way related

to the recapture of single-processor systems. In particular, Plaintiffs argue that narrowing the claimed "logical processes" to "web browser processes" was related to covering single- as well as multiple-processor systems because if both processes require network connectivity, then neither process is isolated and the multiple processors recited in the original claims are no longer necessary. RedBr46-47. But the record belies Plaintiffs' theory. To begin with, claims covering two unisolated processes would defy the central premise of the invention, which was based on the concept of isolation. *See* Appx105-106 (7:1-4, 10:29-31). In any event, Plaintiffs' argument is demonstrably wrong even accepting their premise that both claimed "web browser processes" are unisolated.

Nothing in the prosecution history supports the notion that the applicants' surrender of single-processor systems during original prosecution was linked to isolation of processes. The applicants gave up single-processor systems because prior art (Corthell, Policard, and Brown) disclosed single-processor systems. Appx10153-10154, Appx10159. In particular, they rewrote the "at least one electronic data processor" limitation to claim "at least a first and a second data processor," Appx10149-10150, and they distinguished Corthell on grounds that "Corthell … teaches the use of a single electronic data processor" whereas "[i]n stark contrast, Applicants teach the use of a multi-processor computer having at least a first and second electronic data processor," Appx10153. The applicants similarly

distinguished Policard and Brown, saying they "amended the claims to specify a computer system having at least a first and second electronic data processor," which Policard and Brown lacked. Appx10159. The applicants did note that using two processors provided additional *physical* separation, Appx10153-10154, but they did not contend that two processors were necessary for isolation or that a single processor could not provide isolation. Plaintiffs' current narrative tying the number of processors to the need for isolation is a fiction invented for this litigation.

The claim language also refutes Plaintiffs' assertion of a relationship between the number of processors and the isolation or non-isolation of processes. To begin with, the reissue claims at issue are not limited to a single processor: they require "at least one" processor and thus continue to cover multi-processor systems. Appx136; Appx160. The currently claimed systems run two allegedly unisolated web browser processes *regardless* of whether a system has one processor or multiple processors.

Conversely, isolating only one of the two logical processes did not require multiple processors. Before the original application claims were amended to require multiple processors, they covered the combination of an isolated process and an unisolated process *in a single processor*. Appx10065. Plaintiffs argue that a second processor was "no longer needed" once both processes were unisolated, but that second processor was also unnecessary for isolation in the first place. In particular, before the surrendering amendment, claim 15 covered a computer system with "at

least one electronic data processor" running first and second logical processes, one isolated and the other not. Appx10065. The originally claimed systems could thus run two logical processes, one isolated and one not, *regardless* of whether they had one processor or multiple processors.

Ultimately, there was no relationship between the number of processors and whether the claimed "logical processes" were isolated or not. Plaintiffs' contention that recapturing single-processor systems was related to narrowing "logical processes" to "web browser processes" makes no sense when the patentees drafted claims covering both kinds of processes and "at least one" processor.

Because the limitation on the number of processors is distinct from and unrelated to isolation of processes they run, narrowing the covered processes to web browser processes did not excuse Plaintiffs' recapture of the surrendered single-processor approach. *See*, *e.g.*, *In re Mostafazadeh*, 643 F.3d 1353, 1361 (Fed. Cir. 2011); *In re Gen. Elec. Co.*, 789 F. App'x 857, 859-61 (Fed. Cir. 2019).

### C. The claims are not directed to an "overlooked aspect"

Plaintiffs' alternative argument that the reissue claims address an "overlooked aspect" is equally flawed. Plaintiffs do not contest that this Court has never applied an "overlooked aspects" exception, and it is telling that their brief spends more time on mistaken accusations about inconsistencies in Google's § 251 arguments than on

the merits of whether the reissue claims are directed to previously overlooked subject matter. To the extent Plaintiffs address the merits, their argument fails.

Plaintiffs argue that Google "flip-flops and now argues claims 43 and 67 are actually disclosed within the original '247 Patent claims." RedBr51. According to Plaintiffs, "the question is straightforward: do the original claims of the '247 Patent application disclose the limitations of reissue claims 43 and 67." *Id.* That question is not "straightforward"; it is misguided. The role of claims is not to disclose an invention; it is to delineate the scope of a patentee's exclusive rights. *See* 35 U.S.C. § 112(b). As this Court has recognized for decades, claim scope defines what infringes a patent, but "it is no measure of what [the patent] discloses." *In re Benno*, 768 F.2d 1340, 1346 (Fed. Cir. 1985).

To be sure, claim language in prior-art patents may be cited against later patents, and in that sense the claim language may be a "disclosure." But this Court has cautioned that claim language is not a disclosure of all subject matter within its scope. *Id.* Consistent with that distinction, Google has argued that (a) the '247 specification did not clearly and unequivocally describe an embodiment with two web browser processes (thus violating the original-patent requirement), but (b) two web browser processes nevertheless would have been within the scope of the two "logical processes" claimed in the '247 patent (and thus were not overlooked). Plaintiffs have not shown that either statement is wrong or inconsistent with the other.

As discussed above, the ’247 specification did not *clearly and unequivocally* describe an embodiment with multiple web browser processes as a *separate invention*. Nevertheless, a “web browser process” is unquestionably within the scope of a “logical process.” *See* Appx68 (“It is undisputed that the reissue claims … have been narrowed from first and second logical processes to first and second ‘web browser processes.’”). Thus, regardless of whether the original ’247 patent clearly singled out multiple web browser processes, web browser processes were within the scope of the broader “logical processes” recited in the originally issued claims. As Google explained in its opening brief, a narrowing limitation that was already within the scope of an original claim cannot qualify as “overlooked” as a matter of law. *See* BlueBr52 (discussing *General Electric* and *Hester*).

Plaintiffs criticize Google for arguing that the district court’s analysis of the “overlooked aspects” exception was inconsistent with its analysis of the third step of the recapture test. RedBr53. Plaintiffs argue that the tests “are not so linked.” *Id.* But Google’s point is not that they are linked, but that they are exclusive. The rule against recapture is based on the statutory “error” requirement, and it prevents patentees who made a deliberate choice to surrender subject matter from later portraying their choice as an error. *Mentor Corp. v Coloplast, Inc.*, 998 F.2d 992, 996 (Fed. Cir. 1993). Step three assesses whether there was a narrowing amendment that was related to the surrendered subject matter and avoided substantial recapture.

*Mostafazadeh*, 643 F.3d at 1359. A narrowing amendment is related when it amounts to a modified version of the earlier surrendering amendment, and the rule against recapture is avoided when that amendment is sufficiently narrowing. *Id*. That scenario, in which an earlier surrender is maintained with a later amendment, cannot amount to an "overlooked aspect" because truly overlooked aspects "by definition were never claimed and thus never surrendered." *In re Youman*, 679 F.3d 1335, 1347 (Fed. Cir. 2012).

Here, the '247 claims covered web browser processes because web browser processes were within the scope of the claimed "logical processes." Two web browser processes were therefore not an "overlooked aspect" of the invention.

## III. Google did not infringe any of the claims as a matter of law

### A. Google's accused products did not infringe any claims because they shared "first memory space" originally dedicated to accused "first web browser process" (the Browser) with the accused "second web browser process" (the Renderer)

Google's opening brief explained why the accused Chrome browser products were antithetical to the claimed invention and did not infringe. BlueBr19-21, BlueBr54-60. Plaintiffs respond that "Google's entire non-infringement argument hinges on a fact dispute between the experts." RedBr4. But there was no material fact dispute. Infringement turned on whether the *undisputed* operation of the accused products satisfied the claims. And that is an issue of *law*, not fact. *See Athletic Alts., Inc. v. Prince Mfg., Inc.*, 73 F.3d 1573, 1578 (Fed. Cir. 1996) (literal infringement

collapses into claim construction, a legal issue, when the relevant facts regarding the accused products are undisputed).

Plaintiffs emphasize that the claimed "first web browser process" and "second web browser process" may both access the "*second* memory space." RedBr55-56. That is true but immaterial because Plaintiffs' infringement theory was that both processes can access the "*first* memory space." The five points that do matter were undisputed:

(1) In the claimed inventions, the "first memory space" must be reserved for the "first web browser process" and *in*accessible to the possibly corrupted "second web browser process." *See*, *e.g.*, Appx136 (claim 41: "at least one system file residing on the first memory space is protected from corruption by a malware process downloaded from the network and executing as part of the second web browser process"); Appx4236-4237 (Plaintiffs' expert Rubin); Appx4317 (Rubin).

(2) The "first memory space" must be "distinct" from, and thus must not overlap with, the "second memory space" accessible to both web browser processes. Appx2524-2532 (claim construction); Appx4318-4319 (Rubin).

(3) Under Plaintiffs' own analysis, the "first memory space" in the accused products consisted of "the hard disk and that portion of the browser process memory that cannot be accessed by the rendering processes." Appx5134 (Rubin).

(4) The accused products initially allocated certain memory space exclusively to the Browser process. Appx5144-5147 (Rubin). Because that space was inaccessible to the Renderer process, it was by Plaintiffs' definition "first memory space."

(5) For inter-process communications, the Browser process sent the Renderer process a "handle" giving the Renderer access to some memory space originally dedicated to the Browser. *E.g.*, Appx4602-4604 (Upson); Appx4719-4721 (Larson).

Because the claims prohibit the "second web browser process" from accessing "first memory space" dedicated to the "first web browser process," Plaintiffs' expert tried to redefine the newly shared memory as "second memory space" even though it had been allocated to the Browser process alone (the alleged "first web browser process"). The question, then, is whether Plaintiffs may redesignate what was originally isolated, unshared "first memory space" as shared "second memory space."

The answer is *no* because the patents-in-suit nowhere contemplate on-the-fly redesignation of "first memory space" as "second memory space." As discussed above, "first memory space" must be "distinct" from "second memory space" and not overlap with it. And "first memory space" is strictly off-limits to the second process. Plaintiffs argue that "the specification clearly teaches that memory allocated to the first web browser can be part of the *first or second* memory space." RedBr58. Not so. The specification calls for a "first memory" space for the first process and a "second memory" space for the second process. *E.g.*, Appx106 (9:37-39, 10:34-35).

The first process can also access the "second memory" space, *id.* (10:55-57), but the second process cannot access the "first memory" space, *id.* (10:43-46). Nowhere does the specification say or suggest that memory space *exclusively* allocated to the *first* process may be shared with the *second* process. And allowing the potentially corrupted second process to access first memory space would be antithetical to the claimed invention, whose goal was to keep malware from corrupting files in the first memory space. *E.g.*, Appx105-109 (8:14-18, 10:58-63, 11:38-50, 16:39-43).

Contrary to Plaintiffs' suggestion, classification of "memory space" as "first" or "second" is not defined by which process can access it. The specification does not suggest that the "second memory space" can also be "first memory space" merely because it can also be *accessed* by the first process. Instead, the "memory space" designation is based on the process to which that memory is *allocated*: memory allocated to the first process is "first memory space," and memory allocated to the second process is "second memory space." It follows that memory exclusively allocated to the first process cannot be "second memory space."

In this case, the memory exclusively allocated to the accused "first web browser process" (Browser) did not become "second memory space" simply because it was later accessible by the accused "second web browser process" (Renderer). It remained "first memory space," and there was no infringement because the accused "second web browser process" could access that "first memory space."

### B. Plaintiffs failed to show that Google had the mental state required for indirect infringement of the method claims

Active inducement and contribution both require more than knowledge of the existence of a patent and an intent to cause acts later found to infringe. Active inducement requires affirmatively encouraging infringing acts by others and knowing that the encouraged acts constitute infringement. 35 U.S.C. § 271(b); *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 765-66 (2011); *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006) (en banc). Contribution requires supplying a component with knowledge that doing so is causing infringement, including knowledge that the component is especially made or adapted for infringement and has no substantial non-infringing use. 35 U.S.C. § 271(c); *Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 640-42 (2015). Plaintiffs proved neither one.

As to inducement, Plaintiffs argue that Google encouraged end-users to infringe by designing the accused products to "infringe on opening." RedBr62. But the accused products could not infringe on opening because portions of what Plaintiffs claim was "second memory space" were reserved for the alleged "first browser process" and inaccessible to the alleged "second browser process" at that time. Any infringement could occur only later, based on the chameleon-memory theory that Plaintiffs concocted in this litigation.

Plaintiffs next assert that Google discouraged using the non-infringing single-process configuration. RedBr62. But discouragement of one particular non-infringing mode does not equate to active encouragement of infringement.

Plaintiffs also point to a Google video and blog "as evidence that Google market[ed] Chrome's multi-process sandbox configuration." RedBr62-63. But that at most shows that Google described the benefits of a feature, not that Google knew end-users would infringe by using that feature and encouraged such use. Unlike in *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913 (2005), where Grokster's peer-to-peer music-sharing service clearly promoted copyright infringement, Plaintiffs did *not* show that Google distributed the accused sandboxing feature "with the object of promoting its use to infringe [patents]." *Id.* at 936-37.

Plaintiffs also chastise Google for arguing that Google could not be liable for actively inducing infringement while it had a judgment of non-infringement based on the district court's initial claim construction. RedBr63-65. The parties did agree not to tell the jury about that construction and its reversal by this Court because such evidence would have been confusing and prejudicial. Nevertheless, this Court's opinion never suggested that Google's position was unreasonable, and there was no evidence that Google believed its position was untenable. In any event, as shown above, there was insufficient evidence of active inducement at *any* time.

As to contribution, Plaintiffs argue that Chrome's single-process mode was not a substantial non-infringing use because it was for experts to use in testing and development. RedBr60. But even assuming the jury agreed with that, Plaintiffs' expert admitted that the accused browsers could also be used to view locally stored media. Appx5149-5150. Plaintiffs argue that Google did not show how prevalent that non-infringing use was, but that was not Google's burden. Because this is an infringement issue, *Plaintiffs* bore the burden of proving that that use was *in*substantial, and they failed to carry that burden.

## CONCLUSION

The Court should reverse and direct entry of judgment for Google.

Respectfully submitted,

PERKINS COIE LLP

by /s/Dan L. Bagatell

Dan L. Bagatell

O'MELVENY & MYERS LLP

by /s/Darin W. Snyder

Darin W. Snyder

Counsel for Google LLC

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION

1. This brief complies with the type–volume limitation of Federal Circuit Rule 32(b). The brief contains 6,999 words, excluding the portions exempted by Federal Rule of Appellate Procedure 32(f) and Federal Circuit Rule 32(b).

2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6). The brief has been prepared in a proportionally spaced typeface using Microsoft® Word and 14-point Times New Roman type.

Dated: August 26, 2022.

/s/Dan L. Bagatell
Dan L. Bagatell

## CERTIFICATE OF AUTHORITY

I certify that I have the authorization of my co-counsel Darin W. Snyder to file this brief with his electronic signature.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated: August 26, 2022.

/s/Dan L. Bagatell
Dan L. Bagatell